THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**BUDDY ERIC CHANEY and**
**ELANA CHANEY**                                                                    **PLAINTIFFS**

**v.**                               **Case No. 4:18-cv-00539-KGB**

**CONWAY COUNTY SHERIFF**
**MIKE SMITH; and DEPUTIES OF CONWAY**
**COUNTY SHERIFF; SHAWN GADBURY;**
**JOSH BAKER; TIMOTHY SPOHN; AND**
**KEN EUBANKS, individually and as Officers**
**of the Conway County Sheriff's Department**                        **DEFENDANTS**

## OPINION AND ORDER

Plaintiffs Buddy Eric and Elana Chaney allege violations of 42 U.S.C. §§ 1981 and 1983 against Conway County Deputies Shawn Gadbury, Josh Baker, Timothy Spohn, and Ken Eubanks, in their official and individual capacities, as well as Conway County Sheriff Mike Smith, in his official capacity (Dkt. No. 1). They allege that defendants subjected Mr. Chaney to unlawful seizure, excessive force, denial of medical needs, deprivation of property, and a felony charge, which, in turn, violated Mr. Chaney's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Additionally, Mr. and Ms. Chaney allege that defendants violated their rights pursuant to the Eighth, Ninth, Thirteenth, Fifteenth, and Twenty-first Amendments to the Arkansas Constitution, and they assert the following pendent state law claims: assault, battery, false arrest, false imprisonment, tortious outrage, intentional infliction of emotional distress,

deliberate disregard for the medical needs of Mr. Chaney while under arrest/confinement, and for loss of consortium.

Before the Court is the motion for summary judgment filed by defendants Sheriff Smith and Deputies Gadbury, Baker, Spohn, and Eubanks (Dkt. No. 9). Mr. and Ms. Chaney responded to the motion (Dkt. No. 17). For the following reasons, the Court grants summary judgment to defendants on Mr. and Ms. Chaney's federal law claims and dismisses without prejudice the remaining pendent state claims pursuant to 28 U.S.C.A. § 1367(c)(3).

## I.    Factual Background

The summary judgment record based on the parties' statements of facts, viewed in the light most favorable to plaintiffs, is as follows (Dkt. Nos. 12, 18, 19). On Saturday, July 8, 2017, Mr. Chaney called 911 and reported a dispute between himself and another motorist, later identified as Brandon Stewart, that had turned into an armed conflict. The dispute began with Mr. Chaney's anger at Mr. Brandon Stewart's alleged tailgating and dangerous driving. At some point after passing Mr. Brandon Stewart's vehicle, Mr. Chaney pulled over and exited his vehicle to confront Mr. Brandon Stewart. Mr. Brandon Stewart drove away, and Mr. Chaney got back in his car and drove to his home.

After the incident on the road, Mr. Brandon Stewart called his father, Mr. Anthony Stewart, who came and joined him in his vehicle. Mr. Chaney states that, shortly after arriving home, he saw Mr. Brandon Stewart's car drive by his home and saw someone point a gun at him from the public highway. Mr. Chaney admits that he pulled his own firearm and claims he fired three shots "as a simple warning to the Stewarts to desist."

(Dkt. No. 18, ¶ 1).  Mr. Chaney maintains that he fired shots at the air, not at the Stewarts, but this fact is in dispute.  Further, Mr. Chaney claims that he "was at his home when Stewart pulled his gun; only after Stewart had left from sight did [Mr.] Chaney issue warning shots for stay away." (*Id.*).

Mr. Chaney admits that he called 911 and reported the occurrences on the road as well as at his home.  Although he disputes many of defendants' statements, Mr. Chaney admits that he told deputies about the dispute, including:  (1) that Mr. Chaney had gotten mad at another motorist in traffic; (2) that Mr. Chaney passed the other motorist; (3) that Mr. Chaney had his gun "at a bead" on the passenger in the vehicle, meaning Mr. Chaney was "pointing his gun at the passenger," but Mr. Chaney maintains that this was only after the Stewarts pointed their gun; and (4) Mr. Chaney thereafter fired at least three shots but maintains that he did this only after the Stewarts continued dangerous tailgating and reckless driving and appeared to be following Mr. Chaney to his home (Dkt. No. 18, ¶ 2).

Deputies Gadbury, Eubanks, Spohn, and Baker arrived at Mr. Chaney's home. According to Mr. Chaney, upon arrival, Deputy Eubanks asked Mr. Chaney whether he still had his firearm (Dkt. No. 19, ¶ 11).  Mr. Chaney then lifted his shirt, and Deputy Eubanks took the firearm and unloaded it (*Id.*).

According to Mr. Chaney, the deputies on the scene then talked with Mr. Chaney about the events, as well as Mr. Chaney's health conditions and the medications he was taking (Dkt. No. 19, ¶¶ 12-15).  Mr. Chaney informed the deputies that he had recently been released from the hospital and had had a stroke the month before (*Id., ¶* 12).  After this conversation, according to Mr. Chaney, he talked with his wife, Ms. Chaney, on the

phone (Dkt. No. 19, ¶ 16).  During this conversation, Mr. Chaney told Ms. Chaney about what had happened and "reassured her that his health was fine and that everything was going to be fine [and] that he was surrounded by cops."  (*Id.*).  Ms. Chaney was not present at the scene.

The deputies on the scene also talked to the other motorists, Mr. Anthony and Mr. Brandon Stewart, and the Stewarts told the deputies that, in the initial encounter, Mr. Chaney had blocked the roadway with his vehicle to keep Mr. Brandon Stewart from passing and that Mr. Chaney had pointed his gun out the window at Mr. Brandon Stewart at that point (Dkt. No. 18, ¶ 3).  The Stewarts also claimed that, after Mr. Anthony Stewart picked up Mr. Brandon Stewart and proceeded to drive him home, past Mr. Chaney's house, that Mr. Chaney shot at them (*Id.*).  Mr. and Ms. Chaney do not dispute the Stewarts told this to the deputies, but Mr. Chaney denies the Stewarts' version of events is true (*Id.*).  Further, Mr. Chaney argues that deputies "did not have the benefit of sworn testimony to rely upon from the Stewarts in order to establish the truth thereof" (*Id.*).

Mr. and Ms. Chaney assert that deputies had a statement from Elizabeth Desolvo, whom they describe as "a neighbor and disinterested bystander." (*Id.*).  According to Mr. and Ms. Chaney, Ms. Desolvo told Deputies Gadbury and Baker, who then relayed the information to Sheriff Smith, that "she witnessed Brandon Stewart park near her house, wait for Anthony Stewart to arrive in a light colored Chevy SUV, take several guns out of the SUV and place them in the black pickup; Anthony then drove and the black pickup procee[ed] up the hill toward Chaney's residence" (*Id.*).

After taking statements from the involved parties and otherwise investigating the

4

dispute, including finding four shells under the tree where Mr. Chaney told deputies he had fired only three shots, the investigator on the scene, Deputy Baker, called another investigator, Carl Boyce, to discuss the situation (Dkt. No. 18, ¶ 4). Investigator Boyce happened to be with Sheriff Smith at the time. Sheriff Smith agreed that there was sufficient probable cause to arrest Mr. Chaney and the Stewarts based on the fact: (1) that both Mr. Chaney and the Stewarts "admitted to violating various traffic laws," (2) that both Mr. Chaney and the Stewarts "admitted [to] brandishing firearms (both saying that the other went first)," and (3) that Mr. Chaney "fired several shots (the Stewarts said that [Mr.] Chaney shot at them)" (Dkt. No. 18, ¶ 4).

Mr. and Ms. Chaney maintain that this was insufficient to establish probable cause to arrest Mr. Chaney but sufficient to establish probable cause to arrest the Stewarts (*Id.*). Despite this, Mr. and Ms. Chaney "agree" that it "would be kind of crazy to leave two folks that have been pointing guns at one another with shots fired. . . to deal with on their own." (Dkt. No. 18, ¶ 6).

After the arrest decision was made, Mr. Chaney was advised that he was being placed under arrest (Dkt. No. 18, ¶ 7). Before leaving, he was permitted to gather all his medications and medical devices, which were given to the transporting officer, Officer Eubanks, who then delivered those items to the deputies at the Conway County jail (*Id.*). Mr. Chaney alleges that he told Deputy Eubanks that he had to have his remote stimulator at all times to control his pain. He claims that Deputy Eubanks said, "Well you can't have it today" (Dkt. No. 19, ¶ 19).

5

Mr. Chaney was then handcuffed and asked to get into the back seat of a police vehicle (Dkt. No. 18, ¶ 8). Mr. Chaney agrees that Deputy Eubanks did not shove Mr. Chaney into the vehicle (*Id.*). Mr. Chaney states that he explained to the deputies that he could not get into the vehicle without assistance because of the damage to his legs, knees, and back and because he was handcuffed behind his back. Mr. Chaney further alleges that Deputy Eubanks made the comment, "If I can get in and out of there with my full gear on then you can do it too; just take your time; we have all day." (Dkt. No. 19, ¶ 20). Mr. Chaney states that he pleaded for help getting in the car but that nobody would help (Dkt. No. 18, ¶ 8).

When asked about the claim for excessive force during his deposition, Mr. Chaney responded: "Nobody physically touched me" (Dkt. No 18, ¶ 10). Despite this, Mr. Chaney asserts that the handcuffs were excessively tight, purportedly causing injury to his hand and wrist and requiring subsequent medical treatment (*Id.*). According to Mr. Chaney, he continued to ask why he was being arrested, and Deputy Eubanks told him to "keep [his] mouth shut." (Dkt. No. 19, ¶ 22). During the drive from his home to the jail, Mr. Chaney also contends that Deputy Eubanks hit a "bad spot" on a bridge and that Mr. Chaney's "head literally hit the roof of the car" (Dkt. No 19, ¶ 23). Mr. Chaney states that he continued to complain about how painful and uncomfortable he was.

Upon arrival at the jail, Deputy Eubanks asked Mr. Chaney to exit the patrol car. Mr. Chaney states that he asked for help to get out and that Deputy Eubanks said, "No, nobody is gonna help ya, you can do it. Just take your time. We have all afternoon." (Dkt. No. 19, ¶ 25). Mr. Chaney asserts that, after five to ten minutes of attempting to exit the

vehicle, Deputy Eubanks grasped Mr. Chaney's elbow and very abruptly and painfully pulled him up (Dkt. No. 18, ¶ 10).  Defendants maintain that, during his deposition, Mr. Chaney admitted under oath:  "Nobody physically touched me." (Dkt. No. 12, ¶ 10).

Mr. Chaney alleges that, once inside the Conway County Jail, Deputy Eubanks cuffed Mr. Chaney to a bench but did not loosen the cuffs and that Mr. Chaney repeatedly complained about how tight the cuffs were (Dkt. No. 19, ¶ 27).  After Mr. Chaney arrived at the jail and was booked, his medications were entered into a medication administration record (Dkt. No. 18, ¶ 13); however, it is disputed whether the medications were properly dispensed to him (*Id.*).  Additionally, Mr. Chaney asserts that he told a jail staff person about his pain to his wrist, back, and legs.  Mr. Chaney states that he brought nine medications with him to the jail, each of which he needed several times a day, as well as a medical simulator needed 24 hours a day.  He asserts that, during the three days (Saturday afternoon to Monday morning) he was detained in the County Jail without bond, he was never allowed access to his implanted nerve stimulator device, in spite of the fact that officers were aware the doctor prescribed this device for 24 hours a day, seven days a week (*Id.*).  He states that he was never allowed pain and nerve medication prescribed, or in the frequency prescribed, in spite of requests to numerous deputies and jailers for these items repeatedly (*Id.*).

The Conway County Sheriff's Office "Inmate Medical Information" form states that Mr. Chaney said he was taking nine prescription medications at the time (Dkt. No. 12-1 at 16).  The "Medication Administration Form" shows five medications attributed to Mr. Chaney and indicates that he did receive those medications at varying intervals (*Id.*, at 19).

The extent of the deputies' knowledge regarding Mr. Chaney's medical conditions is disputed (Dkt. No. 18, ¶ 12).  However, neither Deputies Gadbury, Baker, Spohn, nor Eubanks had any day-to-day involvement in the county jail (*Id.*).  Sheriff Smith likewise had little or no day-to-day involvement in the county jail, particularly on the weekends (*Id.*).  Neither Sheriff Smith nor any of the deputies named as defendants and sued in this case had any substantive involvement with, or responsibility for, Mr. Chaney during his brief incarceration in July 2017 (*Id.*).

Mr. Chaney alleges that Ms. Chaney arrived at the jail while he was being booked. Ms. Chaney asserts that she saw one of Mr. Chaney's arms cuffed "'hanging from the wall'" (Dkt. No. 19, ¶ 28).  Ms. Chaney also asserts that she was unable to sleep for "several nights" due to worrying about her husband (*Id.*).

On Monday morning, July 10, 2017, Mr. Chaney was brought to the front of the jail, where he and the Stewarts were brought into the same room (Dkt. No. 18, ¶ 14). Defendants state that, when all parties agreed that they had calmed down and did not want to press charges against one another, they were all released.  Mr. Chaney states that he did not willingly drop the charges, but he faced the prospect of returning to jail if he did not agree, "in spite of the fact Plaintiff was due to appear in Court for release on bond later that same day" (*Id.*).  Mr. and Ms. Chaney maintain that, even though Mr. Chaney was released from jail, "the prosecution against him continued through September 15, 2017," and that he was required "to engage an attorney for his defense" (*Id.*).

Neither the Stewarts nor Mr. Chaney were permitted to take their firearms with them at that time (Dkt. No. 12, ¶ 14).  Mr. and Ms. Chaney do not dispute that Mr. Chaney

"went to the Conway County Sheriff's Department and retrieved his gun, which was obtained by simply showing a receipt to the officers that were present" (Dkt. No. 18, ¶ 15). However, Mr. and Ms. Chaney maintain that, after Mr. Chaney's release without his gun, Mr. and Ms. Chaney requested the return of his weapon multiple times and did not receive the weapon until the current lawsuit ensued (*Id.*).  Defendants maintain that Mr. Chaney only attempted to retrieve his firearm once and that it was released to him at that time.

During his deposition, when asked what Deputy Gadbury did wrong, Mr. Chaney testified:  "Gadbury, he really didn't do anything wrong." (Dkt. No. 18, ¶ 16).  Mr. Chaney admits that, when asked what Deputy Spohn did wrong, Mr. Chaney said:  "He did not help me in that car.  He did not help me out of that car." (*Id.*, ¶ 17).  During his deposition, Mr. Chaney accused Deputy Spohn of "[b]eing a jerk" but provided few details to support his allegations (Dkt. No. 12-3, at 52).  Mr. Chaney also testified:  "Eubanks knew all about my medical stuff.  And I blame him fully.  He did not help me in that car.  He did not help me out of that car."  (*Id.*, at 53).  As for Deputy Baker, Mr. Chaney testified:  "Baker is the one that arrested me.  He's the one that screwed up this whole investigation." (*Id.*).  Now, Mr. and Ms. Chaney assert in part:  "These officers aided and supported each other in every action; each actively participated in Plaintiff's treatment and/or with deliberate indifference stood by and watched his mistreatment, failing to execute their duty to protect the public, including Plaintiff, from harm" (Dkt. No. 18, ¶ 16).

The parties do not dispute that Conway County has policies in place to govern arrests, the use of force, and the provision of medical care in the Conway County Jail (Dkt.

No. 12, ¶ 25).  With respect to Conway County policies, Mr. and Ms. Chaney claim the policies in place are deficient (Dkt. No. 18, ¶ 25).

Mr. and Ms. Chaney agree that Ms. Chaney was not arrested or imprisoned; does not claim she was subjected to force, excessive or otherwise, in this case; did and does not own the firearm that was seized from Mr. Chaney; did not witness Mr. Chaney's arrest; and has not presented medical expenses that she attributes to events in this lawsuit (Dkt. No. 18, ¶¶ 19-24).

## II.     Summary Judgment Standard

Pursuant to the Federal Rules of Civil Procedure, the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine if a reasonable jury could render its verdict for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  Mere denials or allegations are insufficient to defeat an otherwise properly supported motion for summary judgment.  *See Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271-72 (8th Cir. 1992); *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).

First, the burden is on the party seeking summary judgment to demonstrate an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019).  If the moving party satisfies its burden, the burden then shifts to the non-moving party to establish the presence

of a genuine issue that must be determined at trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita*, 475 U.S. at 586, 587). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III.   Analysis Of Individual Capacity Claims Against Deputies Gadbury, Baker, Spohn, And Eubanks

"The essential elements of a constitutional claim under § 1983 are (1) that the defendant acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *L.L. Nelson Enters., Inc. v. Cnty. of St. Louis,* 673 F.3d 799, 805 (8th Cir.2012) (citation omitted). When analyzing the parties' arguments, the Court observes that "a violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983." *Bagley v. Rogerson,* 5 F.3d 325, 328 (8th Cir.1993) (citation omitted).

The deputies named as defendants also assert the defense of qualified immunity to Mr. and Ms. Chaney's claims. "When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated a clearly established right." *Henderson as Tr. for Henderson v. City of Woodbury*, 909 F.3d 933, 939 (8th Cir. 2018) (quoting *Bishop v. Glazier*, 723 F.3d 957, 961 (8th Cir. 2013)). Qualified immunity shields

a government official from liability in his individual capacity so long as the official has not violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense of qualified immunity, the plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation. *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). District courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### A.      Fourth Amendment Claim Arising From Arrest

Mr. and Ms. Chaney assert several claims based on the facts of Mr. Chaney's arrest. They contend that deputies falsely arrested, falsely imprisoned, and maliciously prosecuted Mr. Chaney in violation of the United State Constitution. The Court begins by examining Mr. and Ms. Chaney's Fourth Amendment false arrest claim and addresses separately allegations of false imprisonment and malicious prosecution. The deputies assert that they had probable cause to arrest Mr. Chaney such that there was no violation of a constitutional or statutory right and, in the alternative, that they are entitled to qualified immunity on claims arising from the arrest. *See Howard*, 570 F.3d at 988.

The Fourth Amendment requires that probable cause exist for a warrantless arrest. U.S. Const. Amend. IV; *Fisher v. Wal-Mart Stores, Inc*., 619 F.3d 811, 816 (8th Cir. 2010) (citing *Armine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008)). A warrantless arrest by law

enforcement is reasonable where there is probable cause to believe that someone has committed or is committing a crime. *United States v. Winarske*, 715 F.3d 1063, 1066-67 (8th Cir. 2013) (citing *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004)). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle,* 540 U.S. 366, 371 (2003) (internal quotation omitted). Probable cause to arrest exists if "the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed. . . an offense at the time of the arrest." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1264 (8th Cir. 1996) (quotations omitted).

Arresting officers are not required to witness actual criminal activity or have collected enough evidence so as to justify a conviction for there to be a legitimate finding of probable cause to justify a warrantless arrest.[1] *Winarske*, 715 F.3d at 1067; *United States v. Webster,* 625 F.3d 439, 442 (8th Cir. 2010). Instead, the mere "probability or substantial chance of criminal activity, rather than an actual showing of criminal activity," is all that is required. *Winarske*, 715 F.3d at 1067; *United States v. Mendoza,* 421 F.3d 663, 667 (8th Cir. 2005). In making a probable cause determination, "[l]aw enforcement

---

[1] Aggravated assault under Arkansas law constitutes a Class D felony. Ark. Code Ann. § 5-13-204. This is the charge referenced in the record evidence (Dkt. No. 12-1, at 5). As a result, this Court does not consider whether the Fourth Amendment permits a warrantless arrest for a misdemeanor when the alleged offense did not occur in the presence of the arresting officer. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 340 n.11 (2001); *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1258 (8th Cir. 2010).

officers have substantial latitude in interpreting and drawing inferences from factual circumstances." *United States v. Henderson,* 613 F.3d 1177, 1181 (8th Cir. 2010) (internal quotation omitted).

Defendants assert that there was probable cause to arrest Mr. Chaney based on statements made by Mr. Chaney and the Stewarts regarding their encounters with each other. These statements include: (1) that both Mr. Chaney and the Stewarts "admitted to violating various traffic laws," (2) that both Mr. Chaney and the Stewarts "admitted [to] brandishing firearms (both saying that the other went first)," and (3) that Mr. Chaney "fired several shots (the Stewarts said that Chaney shot at them)" (Dkt. No. 18, ¶ 4). While Mr. Chaney disputes that he violated traffic laws, the validity of probable cause is evaluated at the time of the arrest pursuant to the totality of the circumstances and the information available to the deputies at that time. Although he disputes many of defendants' statements, Mr. Chaney admits that he told deputies about the dispute, including: (1) that Mr. Chaney had gotten mad at another motorist in traffic; (2) that Mr. Chaney passed the other motorist; (3) that Mr. Chaney had his gun "at a bead" on the passenger in the vehicle, meaning Mr. Chaney was "pointing his gun at the passenger," but Mr. Chaney maintains that this was only after the Stewarts pointed their gun; and (4) Mr. Chaney thereafter fired at least three shots but maintains he did this only after the Stewarts continued dangerous tailgating and reckless driving and appeared to be following Mr. Chaney to his home (Dkt. No. 18, ¶ 1). Based on the undisputed record evidence before the Court, even drawing all reasonable inferences in favor of Mr. and Ms. Chaney, probable cause existed for Mr. Chaney's arrest.

To the extent Mr. and Ms. Chaney argue that statements from the Stewarts, alleged victims here, were insufficient alone to establish probable cause and that the deputies should have done more, this Court disagrees.  The Eighth Circuit Court of Appeals has determined that a credible, unsolicited report from the alleged victim containing sufficient detail to suggest the complainant spoke truthfully, although admittedly one-sided, was sufficient to establish probable cause and that no arrest warrant or additional investigation was required to satisfy the Fourth Amendment.  *See Kiser v. City of Huron*, 219 F.3d 814, (8th Cir. 2000).  Here, along with statements from the Stewarts, deputies had statements from Mr. Chaney and physical evidence in the form of shell casings.  The undisputed record evidence before the Court is sufficient to establish probable cause; no Fourth Amendment violation occurred.  Defendants are entitled to summary judgment on Mr. and Ms. Chaney's Fourth Amendment claim arising from Mr. Chaney's arrest.

In the alternative, the deputies seek qualified immunity on Mr. and Ms. Chaney's claim of false arrest.  "The issue for immunity purposes is not probable cause in fact but arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right."  *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996); *Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012).  Here, as an alternative basis on which to grant summary judgment, the Court determines at a minimum that the deputies are entitled to qualified immunity.

Therefore, the Court grants defendants summary judgment on Mr. and Ms. Chaney's Fourth Amendment claims based on Mr. Chaney's arrest brought against defendants in their individual capacities.

### B.     Potential False Imprisonment Claim

Mr. and Ms. Chaney's complaint is not a model of clarity.  To the extent they intend to assert a claim pursuant to § 1983 for alleged false imprisonment based on an alleged lack of probable cause to arrest Mr. Chaney and allegations that his arrest without probable cause resulted in his transport to, and placement in, jail for a period of time, Mr. and Ms. Chaney's allegations fail to state a § 1983 claim for two reasons.  First, this type of false-imprisonment claim is simply an extension of Mr. and Ms. Chaney's false-arrest claim. Second, false imprisonment is a state-law claim that is not actionable under § 1983.  *King v. Beavers*, 148 F.3d 1031, 1034 (8th Cir. 1998) ("False imprisonment is a state law tort claim.  It is not coextensive with the Fourteenth Amendment, which 'protects only against deprivations of liberty accomplished without due process of law.'" (quoting *Baker v. McCollan*, 443 U.S. 137, 145 (1979) (internal quotation omitted))).

### C.     Potential Malicious Prosecution Claim

It also is unclear to the Court whether Mr. and Ms. Chaney intend to assert a malicious prosecution claim under § 1983.  The Supreme Court "has not defined the elements of" a malicious prosecution § 1983 claim, *see McDonough v. Smith*, 139 S. Ct. 2149, 2156 n.3 (2019) (citing *Manuel v. Joliet*, 137 S. Ct. 911, 921-22 (2017)), or decided "whether a claim of malicious prosecution may be brought under the Fourth Amendment," *Manuel*, 137 S. Ct. at 923 (Alito, J., dissenting).  The Eighth Circuit, however, addresses a Fourth Amendment cause of action regarding malicious prosecution in *Stewart v. Wagner*, 836 F.3d 978, 983 (8th Cir. 2016).  In *Stewart*, the Eighth Circuit held that "a § 1983 plaintiff's claim that he was arrested or prosecuted without probable cause, even if labeled

a claim of malicious prosecution, 'must be judged' under the Fourth Amendment, not substantive due process." *Id.* (quoting *Albright v. Oliver*, 510 U.S. 266, 270-71 & n.4 (1994)); *but see Bates v. Hadden*, 576 Fed. App'x 636, 639 (8th Cir. 2014) ("In a pair of 2001 decisions, we observed that malicious prosecution is not a constitutional injury.  As recently as 2012, we expressed uncertainty as to whether 'malicious prosecution is a constitutional violation at all.'" (quoting *Harrington v. City of Council Bluffs, Ia.*, 678 F.3d 676, 679 (8th Cir. 2012) (internal citations omitted)); *Harrington*, 678 F.3d at 679 ("If malicious prosecution is a constitutional violation at all, it probably arises under the Fourth Amendment.").

The Eighth Circuit has been clear that an allegation of malicious prosecution without a corresponding constitutional violation cannot sustain a civil rights claim under § 1983.  *See, e.g.*, *Joseph v. Allen*, 712 F.3d 1222, 1228 (8th Cir. 2013) ("[A]n allegation of malicious prosecution without more cannot sustain a civil rights claim under § 1983."); *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001) (stating that "malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury."); *Technical Ordinance, Inc. v. United States*, 244 F.3d 641, 650 (8th Cir. 2001) ("The general rule is that an action for malicious prosecution does not state a claim of constitutional injury."); *McNees v. City of Min. Home*, 993 F.2d 1359, 1361 (8th Cir. 1993) (stating that a claim for malicious prosecution is not cognizable under § 1983 if it does not allege a constitutional or federal statutory injury).  This Court, for reasons explained in this Order, finds no underlying federal constitutional violation corresponding with Mr. and Ms. Chaney's alleged malicious prosecution claim.  Therefore,

Eighth Circuit precedent dictates dismissal of this malicious prosecution claim brought pursuant to § 1983. *See Joseph*, 712 F.3d at 1228; *Kurtz*, 245 F.3d at 758; *Technical Ordinance*, 244 F.3d at 650; *McNees*, 993 F.2d at 1361.

### D.   Fourth Amendment Allegations Of Excessive Force

Mr. and Ms. Chaney also allege a § 1983 claim for excessive force arising out of Mr. Chaney's arrest and transport to the Conway County Jail. The deputies are entitled to qualified immunity unless they: "'(1) violated a federal statutory or constitutional right, and (2) the unlawfulness of [their] conduct was clearly established at the time.'" *Lane v. Nading*, 927 F.3d 1018, 1022 (8th Cir. 2019); *Howard*, 570 F.3d at 988. "The right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment's prohibition against unreasonable searches and seizures." *Coker v. Arkansas State Police*, 734 F.3d 838, 842 (8th. Cir. 2013); *Howard*, 570 F.3d at 988.

The objective reasonableness standard applies to determine whether a law enforcement officer has used excessive force, whether deadly or not, in the course of an arrest. *Nance v. Sammis*, 586 F.3d 604, 609–10 (8th Cir. 2009) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). In *Kingsley v. Hendrickson*, the Supreme Court decided that excessive force claims brought by detainees and arrestees prior to trial also are evaluated pursuant to the objective reasonableness standard. 576 U.S. 389, 396 (2015). Additionally, prior to *Kingsley*, the Eighth Circuit applied the objective reasonableness standard for claims brought by arrestees. *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).

Therefore, the Court must determine whether the deputies' actions were objectively reasonable in the light of the facts and circumstances confronting the deputies, without regard to the deputies' underlying intent or motivation. *Nance*, 586 F.3d at 610 (citing *Craighead v. Lee*, 399 F.3d 954, 961 (8th Cir. 2005)). "Excessive force means force *applied recklessly* that is unreasonable in light of the facts and circumstances of the time." *Kingsley*, 576 U.S. 389, 393 (quoting the District Court opinion) (alterations adopted). Force is defined as "[p]ower, violence, or pressure directed against a person or thing." Force, Black's Law Dictionary (11th ed. 2019). To succeed on a claim for excessive force, a plaintiff must prove that: (1) defendants used force on plaintiff; (2) defendants' use of force was unreasonable in the light of the facts and circumstances at the time; (3) defendants knew that using force presented a risk of harm to plaintiff, but defendants recklessly disregarded plaintiff's safety by failing to take reasonable measures to minimize the risk of harm to plaintiff; and (4) defendants' conduct caused some harm to plaintiff. *Kingsley*, 576 U.S. 389, 393.

The reasonableness of an officer's use of force is determined by the particular circumstances surrounding the situation. *Brown*, 574 F.3d at 496. Force is least justified when the suspect is nonviolent and when the suspect is not fleeing or resisting arrest. *Brown*, 574 F.3d at 496. A court may consider factors such as: "the severity of the crime; whether the suspect poses a threat of harm to others; whether the suspect is resisting arrest; and other factors, such as whether the situation is 'tense, uncertain, and rapidly evolving,' which would force an officer to make 'split-second judgments' about how much force is

necessary." *Coker*, 734 F.3d at 842–43 (quoting *McKenney v. Harrison*, 635 F.3d 354, 360 (8th Cir. 2011)).

When evaluating whether summary judgment is proper, the Court must view all facts in the non-moving party's favor. Here, Mr. and Ms. Chaney allege that the refusal to help a disabled individual, in this case Mr. Chaney, in and out of the police car qualifies as excessive force (Dkt. No 17, at 29; Dkt. No. 11 at 7-8). Mr. and Ms. Chaney assert that the Conway County Sherriff Department has a policy that authorizes police to utilize "only the amount of force necessary to maintain control" (Dkt. No. 17, at 29).

In this case, Mr. Chaney was arrested on July 8, 2017. Upon arrest, Deputy Eubanks placed Mr. Chaney in handcuffs and did not assist Mr. Chaney into the back of the police car. Here, unlike in *Brown v. City of Golden Valley* where the Eighth Circuit held that the police officer used excessive force when the officer tased plaintiff and bent her arm behind her, Deputy Eubanks did not physically touch Mr. Chaney as he entered the police car. *Brown*, 574 F.3d at 496. Rather, Deputy Eubanks gave Mr. Chaney ample time to enter and exit the vehicle. There is, however, a dispute as to whether Deputy Eubanks grabbed Mr. Chaney's arm when exiting the vehicle. Even if the Court credits Mr. Chaney's assertion that Deputy Eubanks grabbed his arm as he was exiting the vehicle, the Court finds that, as a matter of law, this alleged conduct under the circumstances was not objectively unreasonable.

Mr. and Ms. Chaney also contend that one of the deputies forcibly put handcuffs on Mr. Chaney that were too tight and ultimately caused injury (Dkt. No. 18, ¶ 8). The Eighth Circuit has recognized that "[h]andcuffing inevitably involves some use of force."

*Wertish v. Krueger*, 433 F.3d 1062, 1066-67 (8th Cir. 2006).  Additionally, handcuffing "almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs [were] applied."  *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011) (citing *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002)).  "Grabbing a suspect's arm and twisting it behind his back is a relatively common and ordinarily accepted non-excessive way to detain an arrestee."  *Frazier v. City of Pine Bluff, Arkansas*, No. 5:16-CV-00135 BSM, 2017 WL 3160563, at *8 (E.D. Ark. July 25, 2017), aff'd, 733 F. App'x 873 (8th Cir. 2018) (internal quotation omitted).  It is well established "that when a person is subdued and restrained with handcuffs, a 'gratuitous and completely unnecessary act of violence' is unreasonable and violates the Fourth Amendment."  *Blazek v. City of Iowa City*, 761 F.3d 920, 925 (8th Cir. 2014) (quoting *Henderson v. Munn*, 439 F.3d 497, 503 (8th Cir. 2006)) (alterations adopted).

The Court has fully considered the record evidence related to Mr. Chaney's claims regarding the handcuffs.  Here, Deputy Eubanks handcuffed Mr. Chaney in the course of his arrest, as was standard practice according to defendants.  The Court finds on the record evidence before it that, as a matter of law, all of the alleged conduct under the circumstances that Mr. Chaney attributes to defendants was not objectively unreasonable. In the alternative and at a minimum, controlling law was not sufficiently clearly established at the time to put defendants on notice that their conduct purportedly violated the Fourth Amendment, thereby entitling defendants to qualified immunity.

Therefore, defendants are entitled to summary judgment on Mr. and Ms. Chaney's Fourth Amendment claims against them in their individual capacities alleging excessive force.

### E.   Fifth Amendment Allegations

Mr. and Ms. Chaney cite the Fifth Amendment in their complaint (Dkt. No. 1). The Fifth Amendment, made applicable to the states by the Fourteenth Amendment, provides that "[n]o person. . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. Amend. V.  The nature of the right is, in turn, protected by the "*Miranda* rule," which "creates a presumption of coercion, in the absence of specific warnings, that is generally irrebuttable for purposes of the prosecution's case in chief." *United States v. Patane*, 542 U.S. 630, 639–41 (2004); *see also Miranda v. Arizona*, 384 U.S. 436 (1966).

To the extent Mr. and Ms. Chaney purport to challenge an alleged violation of the "core privilege against self-incrimination," *Patane*, 542 U.S. at 639, it is clear that one may assert the Fifth Amendment self-incrimination privilege in any proceeding—whether it is civil, criminal, administrative, judicial, investigatory, or adjudicatory—but "a violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case."  *Chavez v. Martinez*, 538 U.S. 760, 770 (2003) (plurality); *see also United States v. Verdugo–Urquidez*, 494 U.S. 259, 264 (1990) ("The privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants.  Although conduct by law enforcement

officials prior to trial may ultimately impair that right, a constitutional violation occurs only at trial." (citations omitted)).

Here, it is undisputed that Mr. Chaney was not compelled to be witness against himself in a criminal case.  Further, nothing in the record evidence before the Court implicates the *Miranda* rule.   As a result, Mr. and Ms. Chaney fail to state a Fifth Amendment claim.  *See Winslow v. Smith*, 696 F.3d 716, 731 n.4 (8th Cir. 2012) (determining that  no § 1983 claim was stated based  on  the Fifth Amendment because plaintiffs did not proceed to criminal trial;  violation of Fifth Amendment Self–Incrimination Clause does not occur until statements compelled by police interrogation are used at criminal trial); *Entzi v. Redmann*, 485 F.3d 998, 1002 (8th Cir. 2007) (holding that "the general rule is that a person has  no claim for civil liability based on the Fifth Amendment's guarantee against compelled self-incrimination unless compelled statements are admitted against him in a criminal case"); *Hancock v. Chancellor*, No. 5:17-CV-05018, 2017 WL 1735168, at *2 (W.D. Ark. May 3, 2017) (finding no § 1983 claim under Fifth Amendment in case where detectives and transport officers questioned plaintiff, but plaintiff did not allege that any statements made during questioning were used against him at trial).

### F.    Sixth Amendment Allegations

Mr. and Ms. Chaney cite the Sixth Amendment in their complaint (Dkt. No. 1).  Mr. and Ms. Chaney do not allege that defendants' investigation ever resulted in a criminal prosecution that would trigger the Sixth Amendment right to counsel; Mr. and Ms. Chaney cannot prevail on a § 1983 claim under the Sixth Amendment.  *Warren v. City of Lincoln,*

*Neb.*, 864 F.2d 1436, 1442 (8th Cir. 1989) (determining that no § 1983 claim under the Sixth Amendment had been stated against police officers who imprisoned plaintiff, denied him access to counsel, and interrogated, fingerprinted, and photographed him because plaintiff "never was subjected to adversary judicial criminal proceedings such as formal charges, arraignment, or indictment").

### G.     Eighth And Fourteenth Amendment Allegations

Mr. and Ms. Chaney also allege that defendants acted with "deliberate indifference, failed to follow proper jail procedures, and neglected to adequately monitor the Plaintiff[']s condition and provide needed medication while at the Conway County Jail." (Dkt. No. 1, ¶ 7).  Mr. and Ms. Chaney cite the Eighth and Fourteenth Amendments in their complaint (Dkt. No. 1).  Defendants argue that none of the deputies named had any substantive involvement with, or responsibility for, Mr. Chaney during his incarceration.  Defendants also argue that the record evidence demonstrates that the deputies did not act with deliberate indifference towards Mr. Chaney's medical needs and that, therefore, they are entitled to qualified immunity.

Pretrial detainee § 1983 claims are analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment prohibition of cruel and unusual punishment.  *See Kahle v. Leonard,* 477 F.3d 544, 550 (8th Cir. 2007) (stating "[t]his makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment.").  The Eighth Amendment has no application until there has been a formal adjudication of guilt.

The protection that an inmate be provided with adequate medical care extends to pretrial detainees. *Corwin v. City of Indep., Mo.*, 829 F.3d 695, 698 (8th Cir. 2016) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  To establish that a denial of medical care rises to the level of a constitutional violation, an inmate must show that a defendant acted with deliberate indifference.  *Id.*  The test for deliberate indifference consists of two prongs. *Schuab v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011).  First, an inmate must show that he "suffered from an objectively serious medical need."  *Id.*  Second, an inmate must show that the defendant knew of and deliberately disregarded that need.  *Id.*  Deliberate disregard is a mental state "equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposely causing or knowingly bringing about a substantial risk of serious harm to the inmate."  *Id.* at 914–15 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)); *see also Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018), *cert. denied*, 139 S. Ct. 2675 (2019).

The Court considers defendants' argument that the deputies named as defendants had no involvement with or responsibility for Mr. Chaney during his incarceration.  Mr. and Ms. Chaney dispute that the deputies had no substantive involvement with Mr. Chaney's incarceration and claim that it is irrelevant (Dkt. No. 18, ¶ 18).  "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."  *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citing *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir.2006)).  A prison official may be held liable to a detainee if he directly participated in the violation of constitutional rights or if his failure to train or supervise the offending actor caused the violation.  *See Tilson v. Forrest City*

*Police Dep't,* 28 F.3d 802, 806-07 (8th Cir. 1994).  Based on the record evidence before the Court, Deputies Gadbury, Baker, Spohn, and Eubanks were not involved with or responsible for Mr. Chaney's medical treatment at the Conway County Jail.  Though the deputies allowed Mr. Chaney to gather his medicine while at his home and then delivered that medicine to the jail, there is no evidence or allegation suggesting that these deputies had any control over how and when Mr. Chaney received his medication while housed at the Conway County Jail.  Rather, the administration of Mr. Chaney's medications appears to have been handled by jail administrative staff.  Therefore, Deputies Gadbury, Baker, Spohn, and Eubanks are entitled to summary judgment in their favor on Mr. and Ms. Chaney's claims of inadequate medical care while at the Conway County Jail.

### IV.    Official Capacity Claims

Mr. and Ms. Chaney bring claims against Deputies Gadbury, Baker, Spohn, and Eubanks in both their official and individual capacities (Dkt. No. 1, ¶ 4(C)).  Mr. and Ms. Chaney also bring suit against Sheriff Smith in his official capacity (Id., ¶ 4(B)).  A claim against an official in his official capacity is equivalent to a suit against the governmental entity of which the officer is an agent.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)).  Therefore, suit against a sheriff or other county official or employee, in his or her official capacity, is the equivalent of a suit against the county itself.  *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).  Accordingly, the Court treats Mr. and Ms. Chaney's claims against the deputies and Sheriff Smith in their official capacities as a suit against Conway County, the governmental entity.

A governmental entity is liable only when the entity's policy or custom caused the violation of federal law.  *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998) ("Liability for city officials in their official capacities is another form of action against the city, and it requires the same showing that a policy or custom caused the alleged violation.").  Pursuant to § 1983, the governmental entity is liable if the plaintiff establishes that the alleged constitutional violation resulted from a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the governmental entity or through a custom, "even though such a custom has not received formal approval though the body's official decision making channels."  *Marchant v. City of Little Rock, Ark.*, 741 F.2d 201, 204 (8th Cir. 1984) (quoting *Monell,* 436 U.S. at 690-91) (alterations adopted). Therefore, a plaintiff must establish an official policy or custom to recover against defendants sued in their official capacities.  *See Marchant*, 741 F.2d at 204 (citing *Rollins v. Farmer*, 731 F.2d 533, 535 (8th Cir. 1984)).  Under certain circumstances, a governmental entity may also be liable for the inadequate training of its employees. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

In their complaint, Mr. and Ms. Chaney maintain that the alleged constitutional violations of the named deputies are "the practices and use of" Conway County and the Conway County Sheriff Department (Dkt. No. 1, ¶ 9).  It is unclear exactly which practices, policies, or customs Mr. and Ms. Chaney allege caused the purported violations of their constitutional rights.  The Court understands Mr. and Ms. Chaney to argue that the defendants lacked policies or procedures sufficient to ensure that deputies establish

probable cause before arresting an individual, that deputies do not treat detainees with "deliberate indifference to their serious needs," and that deputies "provide prisoners necessary medical needs." (Dkt. No. 17, at 31).

## A.    Fourth, Fifth, And Sixth Amendment Claims

Defendants have submitted the Conway County Sheriff Department's policies regarding probable cause and use of physical force (deadly and non-deadly) (Dkt. No. 12-1, at 21).  Mr. and Ms. Chaney have failed to identify any specific insufficiencies with these policies resulting in unconstitutional actions.  Mr. and Ms. Chaney have not identified any unwritten customs resulting in constitutional deprivations.  Further, this Court has concluded that defendants are entitled to summary judgment in their favor on Mr. and Ms. Chaney's underlying Fourth, Fifth, and Sixth Amendment claims.  Liability will not attach as to the governmental entity unless individual liability is found on an underlying substantive claim.  *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005).  As a result, defendants sued in the official capacity are entitled to summary judgment in their favor on Mr. and Ms. Chaney's Fourth, Fifth, and Sixth Amendment claims under § 1983.

## B.    Eighth And Fourteenth Amendment Claims

Although it is unclear exactly which practices, policies, or customs Mr. and Ms. Chaney allege caused the purported constitutional violations cited in their complaint, in support of their motion for summary judgment defendants have submitted the Conway County Sheriff's Department's policies regarding medical attention and medication (Dkt. No. 12-1, at 21).  The policy titled "Section 23: Medication" provides in relevant part:

> Detainee will be issued prescribed medications at approximately
> 6:00 a.m., 12:00 noon, 6:00 p.m., and 10:00 p.m. unless otherwise

28

> prescribed.  Medications will be taken in the presence of the issuing officers.
> Both the officer and the detainee will initial the medication log, detainees
> will not keep any medications in the cell area.

(Dkt. No. 12-1, at 26).

The medication administration record ("MAR") set up for Mr. Chaney during his incarceration indicates that five of Mr. Chaney's medications were distributed to him, at varying times  (Dkt. No. 12-1, at 19).  Mr. Chaney's "Inmate Medical Form" also confirms that he told the deputies on duty that he was taking nine prescription medications at the time  (Dkt. No. 12-1, at 16).  According to the MAR, Mr. Chaney's medication was not distributed at the times established by department policy, nor were all of Mr. Chaney's medications distributed to him.

There was no official explanation in the record evidence given as to why Mr. Chaney was not given all nine of the medications he brought with him, nor access to his pain medication via his implanted nerve stimulator.  Mr. Chaney states that he was told that he would not be given his pain medications "because of the other inmates." (Dkt. No. 19, ¶ 30).  Mr. Chaney claims that he made several requests and complaints to the deputies while he was imprisoned, both verbally and once *via* email.  Sheriff Smith acknowledges that he was aware that Mr. Chaney brought medications with him and that Mr. Chaney complained of being denied those medications (Dkt. No. 12-5, at 11:2-13:13).

Even if the Court were to determine the record before it establishes a factual dispute regarding whether Mr. Chaney was given all of his medications and, if not, the reasons why not, there is nothing in the record before the Court that demonstrates the named defendants were directly involved in decision-making with respect to Mr. Chaney's

medication.   Moreover, to recover on this claim, Mr. Chaney "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation."   *Jolly v. Knudsen*, 204 F.3d 1094, 1096 (8th Cir. 2000).   The record evidence before the Court does not establish a genuine disputed issue of material fact with respect to deliberate indifference on the part of any named defendant sued in their individual capacity.

Further, Sheriff Smith has only been sued by Mr. and Ms. Chaney in his official capacity.   As a result, to resolve those claims, the Court must consider whether any allegedly unconstitutional action was pursuant to an unconstitutional policy, custom, or failure to supervise or train.   Mr. and Ms. Chaney have failed to identify any aspect of Conway County Jail's "Medication" policy that is unconstitutional.   Mr. and Ms. Chaney have not alleged facts suggesting an ongoing governmental custom of providing inadequate medical care.   Mr. and Ms. Chaney also have not alleged facts supporting a claim that Conway County inadequately trained or supervised its jail staff in the dispensation of medication.   Therefore, Sheriff Smith is entitled to summary judgment on Mr. and Ms. Chaney's claim of inadequate medical care brought against Sheriff Smith in his official capacity.

### V.       Allegations Of Deprivation Of Property Without Just Cause

Mr. and Ms. Chaney claim that defendants took Mr. Chaney's firearm without cause or justification.   Additionally, Mr. and Ms. Chaney claim that the refusal to return the firearm upon request is a violation of the United States Constitution.   Such a claim arises under the Fourteenth Amendment.   "To set forth a procedural due process violation,

a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 817 (8th Cir. 2011) (quoting *Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999)). "The circumstances of the deprivation dictate what procedures are necessary to satisfy this guarantee." *Swipies v. Kofka*, 419 F.3d 709, 715 (8th Cir. 2005).

Mr. Chaney does have a protected property interest in his firearm. While Mr. Chaney has an interest in his property, Mr. Chaney fails to create a genuine disputed issue of material fact regarding whether defendants deprived Mr. Chaney of his interest without due process. The facts in the record evidence before the Court, even construed in favor of Mr. Chaney, demonstrate that the deputies had sufficient probable cause to arrest Mr. Chaney and, therefore, that the seizure of the firearm was justified. Further, though it is disputed whether Mr. and Ms. Chaney were forced to make multiple requests for the return of Mr. Chaney's firearm, it is undisputed that Mr. Chaney was ultimately able to retrieve his firearm pursuant to Conway County policy. The record evidence before the Court does not support a claim of constitutional deprivation of property without due process of law, and defendants are entitled to summary judgment on this claim.

### VI.    Claims Pursuant to § 1981

In their complaint, Mr. and Ms. Chaney cite 42 U.S.C. § 1981 as a basis for their claims (Dkt. No. 1, ¶ 1). It is unclear from the face of their complaint upon what allegations they base a claim under § 1981. Section 1981 provides that all persons within the jurisdiction of the United States shall have "the same right. . . to make and enforce

contracts. . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  First enacted in 1866, the statute was amended in 1991 to define "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  *Id.* § 1981(b). While § 1981 prohibits racial discrimination in "all phases and incidents" of a contractual relationship, *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 302 (1994), the statute "does not provide a general cause of action for race discrimination."  *Youngblood v. Hy–Vee Food Stores, Inc.,* 266 F.3d 851, 855 (8th Cir. 2001).  Rather, the 1991 amendments retained the statute's focus on contractual obligations.  *Id.*

From the Conway County Jail booking information, the Court understands that Mr. Chaney is a Caucasian male (Dkt. No. 12-1, at 15).  There is no basis in the record for Mr. Chaney to maintain a claim pursuant to § 1981.

### VII.    Ms. Chaney's Claims

The alleged constitutional violations at issue under § 1983 plainly allege deprivations of Mr. Chaney's rights, and § 1983 does not afford Ms. Chaney an independent cause of action based upon constitutional deprivations allegedly suffered by her husband.  *Coon v. Ledbetter,* 780 F.2d 1158, 1160–61 (5th Cir. 1986) (citing cases); *see Flittie v. Solem,* 827 F.2d 276, 280 (8th Cir. 1987); *Davis v. Fulton Cty., Ark.*, 884 F. Supp. 1245, 1250 (E.D. Ark. 1995), *aff'd*, 90 F.3d 1346 (8th Cir. 1996).  It is unclear to what extent Ms. Chaney intends to allege under Arkansas law a claim for loss of consortium; such a claim is derivative to that of the injured spouse, so that a judgment adverse to the injured spouse acts as a bar to the other spouse's action. *Ouachita Nat. Bank*

*v. Tosco Corp.*, 686 F.2d 1291, 1299 (8th Cir. 1982), *on reh'g*, 716 F.2d 485 (8th Cir. 1983); *Lopez v. Waldrum Estate*, 460 S.W.2d 61, 65 (1970) (citing cases).  The Court for reasons explained in this Order declines to exercise jurisdiction over any state law claims.

**VIII.   State Law Claims**

In their complaint, Mr. and Ms. Chaney allege several state law claims, including claims pursuant to the Arkansas Constitution and state claims of assault, battery, false arrest, false imprisonment, tortious outrage, infliction of emotional distress, and potentially the loss of consortium.  The Court has dismissed all of Mr. and Ms. Chaney's federal claims, and the Court declines to exercise jurisdiction over Mr. and Ms. Chaney's state law claims pursuant to 28 U.S.C.A. § 1367(c)(3).

**IX.   Conclusion**

For the foregoing reasons, the Court grants the defendants' motion for summary judgment as to the plaintiffs' federal constitutional claims asserted pursuant to § 1983 against defendants in their individual and official capacity and dismisses the remaining state law claims, declining to exercise jurisdiction over the remaining state law claims (Dkt. No. 9).

So adjudged this 30th day of November, 2020.


Kristine G. Baker
United States District Judge